IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICTORIA L. POAGE,                                          CV 04-6227-MA

       Plaintiff,                                     OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.

KATHRYN L. TASSINARI
BRENT WELLS
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

(503) 727-1024

LEISA A. WOLF
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3621

       Attorneys for Defendant

MARSH, Judge.

    Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income benefits on (SSI) under Title II of the Social Security Act, 42 U.S.C. §§ 1381-83f.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding she is not entitled to benefits. Plaintiff seeks an order reversing the Commissioner's decision and remanding the case for an award of benefits or for further development of the record regarding plaintiff's mental impairment.  The Commissioner contends her decision is based on substantial evidence and is free from legal error.  The Commissioner, therefore, requests the Court to affirm her decision.

    This court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court **REVERSES** the final decision

2  - OPINION AND ORDER

of the Commissioner and **REMANDS** the matter for further proceedings consistent with this opinion and order.

## BACKGROUND

Plaintiff applied for DIB and SSI on May 1, 2000, alleging the onset of disability as of July, 23, 1999. Her application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). The ALJ conducted two hearings that were held on December 12, 2002, and September 9, 2003.

On February 27, 2004, the ALJ found plaintiff is capable of performing a significant if not full range of medium work that is available in significant numbers in the national economy and, therefore, she is not under a disability.

The ALJ's decision became the final decision of the Commissioner on May 24, 2004, when the Appeals Council denied plaintiff's request for review.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

**DISABILITY ANALYSIS**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability. See 20 C.F.R. § 416.920(b).

At Step Two, the ALJ found plaintiff had severe physical and psychological impairments. 20 C.F.R. § 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments did not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." 20 C.F.R. § 416.920(d).

At Step Four, the ALJ found plaintiff's limitations precluded her from performing detailed and complex tasks, and moderately limited her ability to work with the public and co-workers. Accordingly, the ALJ found plaintiff was unable to perform her past relevant work as a waitress, cashier, assistant

manager, cook, electronic supervisor, motel manager, child care provider, and shipping/receiving/soldering/quality assistance worker. 20 C.F.R. § 416.920(f).

At Step Five, the ALJ, however, found plaintiff retained the residual functional capacity to perform jobs involving a significant, if not full, range of medium work, and that exist in significant numbers in the national and state economy, including such jobs as hand packager, kitchen helper, and janitor.

Accordingly, the ALJ found plaintiff was not under a disability. 20 C.F.R. §§ 4.1520(f) and (f).

## DISCUSSION

As of February 27, 2004, when the ALJ issued his decision, plaintiff was 42 years old. She has a high school diploma and two years of college. The issue presented in this case is whether, in light of plaintiff's medical history, the ALJ improperly failed to credit the testimony of an examining psychologist and plaintiff's husband regarding plaintiff's alleged multiple personality disorder, now more commonly referred to as "dissociative identity disorder."

1. **Plaintiff's Medical History.**

Plaintiff provided details of a remarkable but often inconsistent medical history to health care providers over the years. In August 2000, she told psychologist Frank Lahman, Ph.D, that by age 18 she had given birth to three children when she was

6 - OPINION AND ORDER

13, 15 and 17. She said she had been involved in automobile accidents when she was 12 and 14 that left her with a broken back on both occasions and comatose for 3 months and six weeks respectively, with long term hospitalization and rehabilitation. She also said her mother hit her with a baseball bat at age 12 that left her comatose for three months.

In January 2000, plaintiff told mental health specialist, Linda Tofflemire, MA, that she had broken "just about every bone in my body" and was subject to severe injuries secondary to childhood and adult physical abuse, had undergone 28 surgical procedures, and had multiple pregnancies with associated miscarriages and abortions.

In May 1999, plaintiff told Stefan Spann, M.D., she has had breast cancer, cervical cancer, leukemia, with an associated bone marrow transplant, hepatitis C, and a hysterectomy.

There are no medical records to verify substantial parts of the above described medical history.

Between October 1998, and January 2000, plaintiff sought treatment on at least 12 occasions for severe migraine headaches. She also complained frequently of nausea, diarrhea, and vomiting. During this period of time, different doctors concluded plaintiff was engaged in drug seeking behavior.

Thereafter, plaintiff sought medical treatment for the ongoing migraine headaches, vomiting, diarrhea, anxiety,

7 - OPINION AND ORDER

depression, panic attacks, sleeplessness, and flashbacks.  In addition, plaintiff continued to complain of back pain.  In May 2000, after plaintiff complained of abdominal pain, laboratory tests suggested plaintiff suffered from ulcerative colitis.  Between October 2001, and January 2002, plaintiff was hospitalized on four separate occasions and was seen on an outpatient basis on multiple occasions for severe migraine headaches.

In April 2000, Lou Garner, MA, a mental health specialist for Benton County Mental Health, who had been treating plaintiff for panic attacks, noted plaintiff told him about an experience when another "personality came out."  Plaintiff said that after this experience, she reviewed her journals and found that, from 1983-1993, six different personalities wrote in her journal.  From 1993 to 1999 there were no other entries involving these different personalities.  Garner suggested a potential diagnosis of dissociative identity disorder.  Garner continued to treat plaintiff until at least June 2002.

Between January 2000 and July 2002, Roy Nebeker, M.D., a staff psychiatrist for Benton County Mental Health, treated plaintiff for her mental disorders, including dissociative identity disorder, which he diagnosed "per Lou Garner."

In June 2000, Clinical Psychologist J. Mark Wagener, Ph.D., examined plaintiff on behalf of the State of Oregon Department

of Disability Services in connection with plaintiff's claim for disability benefits. Dr. Wagener interviewed plaintiff, obtaining a medical and family history, including plaintiff's history of multiple personality disorder, and he performed a series of psychological tests, including a WASI intelligence test, Beck personality and anxiety tests, and an MMPI-2 test. Dr. Wagener found plaintiff to be in the low average range of intelligence and the Beck tests suggested she was depressed and had severe anxiety. The MMPI-2 reflected a high number of unusual responses, but "the questionnaire was considered to be taken in a valid manner." Based on his interview and the test results, Dr. Wagener diagnosed posttraumatic stress disorder, panic disorder, major depression, and multiple personality disorder (now known as dissociative identity disorder). Dr. Wagener concluded that:

> This person's problems with anxiety and depression are marked. Also her ability to interact with the general public is also significantly compromised. While medication may alleviate some of the symptoms, learning to manage the residuals of a life of being abused will require extended psychotherapy.
>
> I do not believe that she will be able to engage in substantial gainful activity for at least a year.

AR 248.

In June 2001, Clinical Psychologist Robinann Cogburn, Ph.D., conducted a comprehensive psychological examination of plaintiff at the request of the Albany Disability Services Office to

9 - OPINION AND ORDER

determine plaintiff's ability to perform work in the next twelve months.  Dr. Cogburn took a medical and social history, performed a WASI intelligence test, an MMPI, and reviewed Dr. Wagener's report.  Contrary to Dr. Wagener, Dr. Cogburn diagnosed malingering, provisional.  She found the WASI intelligence score "likely underestimate[s] [plaintiff's] actual abilities because of lack of effort."  Dr. Cogburn concluded the results of the MMPI were invalid and were "consistent with deliberate distortion of the clinical picture."  Dr. Cogburn concluded the invalid results reflected malingering or "a cry for help." Accordingly, Dr. Cogburn diagnosed malingering, provisional.  Her further diagnoses included ruling out factitious disorder, posttraumatic stress disorder, panic disorder with agoraphobia, depressive disorder, borderline personality disorder, and dissociative identity disorder.  Dr. Cogburn concluded that she could not "with any confidence conclude that [plaintiff's] psychiatric symptoms are actually so severe as to render her unable to function in an employment setting at this time." AR 999.  Dr. Cogburn, however, suggested plaintiff "might benefit from an inpatient evaluation [of the claimed dissociative identity disorder], especially if providers with expertise in this rare condition are available to examine her."  AR 999.

In November, 2001, plaintiff was examined by psychiatrist

James Phelps, M.D., who consulted with plaintiff's treating physicians, including Dr. Nebeker. Dr. Phelps diagnosed "probable posttraumatic stress disorder (not reviewed), probable dissociative identity disorder (reviewed only briefly), [and] probable bipolar disorder (primarily due to the patient's history and prior diagnosis of same)." AR 799.

On September 16, 2003, Dr. Nebeker and Mr. Garner wrote a letter to plaintiff's attorney recommending that plaintiff "should be evaluated diagnostically by a psychologist with considerable familiarity with dissociation, and the Structured Clinical Interview for Dissociative Disorders." AR 1019. They noted in the letter that the MMPI test, which Dr. Cogburn relied on in her provisional malingering diagnosis, "has not been standardizes (sic) with dissociative disorder subjects." Id.

**2. The ALJ's Decision.**

The ALJ based his finding that plaintiff was able to work in part on plaintiff's lack of credibility given her drug seeking behavior, inconsistent medical histories, and her ability to engage in certain physical activities that are inconsistent with the degree of pain she claims.

The ALJ also refused to accept that plaintiff's inconsistent reporting may be partly a result of her dissociative identity disorder. The ALJ rejected the testimony of plaintiff's husband

11 - OPINION AND ORDER

who described how plaintiff would "bring different personalities on a daily basis," although the ALJ did accept the husband's testimony as credible to the extent it was "descriptive of [his] perceptions."

The ALJ also rejected Mr. Garner's diagnosis that plaintiff suffered from dissociative identity disorder because Garner is "not an acceptable medical source." The ALJ noted Garner was the "primary advocate" for that diagnosis.

   3.  **Analysis**.

As noted, the issue is whether the ALJ disregarded relevant evidence regarding plaintiff's claim that she is disabled because she suffers from dissociative identity disorder.

The ALJ disregarded the evidence of a potential diagnosis of dissociative identity disorder in large part because it was based on plaintiff's self-report and, in light of the obvious inconsistencies in plaintiff's versions of her medical history, the ALJ found plaintiff's self-report was not entirely credible.

Dr. Wagener, an examining physician opined that plaintiff was unable to work because of anxiety and depression, in part resulting from a diagnosis of dissociative identity disorder. Dr. Nebeker, a psychiatrist, also made a diagnosis of dissociative identity disorder, albeit based on Mr. Garner's diagnosis, only after he had examined plaintiff on a number of

occasions over a two and one-half year period of time.  Dr. Cogburn, a psychologist, did not rule out a diagnosis of dissociative identity disorder notwithstanding her provisional diagnosis of malingering.  Finally, both Dr. Nebeker and Dr. Cogburn recommended further examination of plaintiff by a medical practitioner with specific expertise in that area.

The court agrees with plaintiff that the ALJ failed to give sufficient reasons to disregard the medical opinion of Dr. Wagener.  "In disability benefit cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability--the claimant's ability to perform work." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  When "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"  Lester, 81 F.3d at 834 (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).  Ignoring evidence from an examining physician constitutes an effective rejection of that evidence.  See Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding [the physician's] opinions and making contrary findings, [the ALJ] effectively rejected them.").

The court, however, concludes it is not appropriate at this time to credit the opinions of Dr. Wagener regarding his

diagnosis of dissociative identity disorder and plaintiff's inability to work as a matter of law. Nevertheless, the ALJ has a duty to develop the record in Social Security cases. <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir.1983). "This duty exists even when the claimant is represented by counsel" because "[d]isability hearings are not adversarial in nature. [The] ALJ has basic duty to "inform himself about facts relevant to his decision." <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). (Internal citations omitted). The record reflects considerable uncertainty regarding the diagnosis of dissociative identity disorder. The court finds it is particularly significant that Dr. Cogburn, who is obviously skeptical of plaintiff's claims, recommended that she be examined by an expert in the area, as did Dr. Nebeker. The court finds the ALJ should have acted on the recommendations of the doctors in light of Dr. Wagener's prior diagnosis and, at a minimum, should have ordered a further examination of plaintiff by an expert in the field of dissociative identity disorder before he rejected Dr. Wagener's diagnosis, which was one of the bases for his determination that plaintiff was unable to work.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## CONCLUSION

For these reasons, the Court **REVERSES** the final decision of the Commissioner and, pursuant to 42 U.S.C. § 405(g), **REMANDS** this matter for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED this 17 day of June, 2005.

/s/   Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge
